STATE OF CONNECTICUT *v.* JOSEPH ANCONA
(SC 16255)

Sullivan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued February 14—officially released May 22, 2001

*Joseph Visone*, special public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael Gailor* and *David Zagaja*, assistant state's attorneys, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Joseph Ancona, was charged with four counts of arson in the first degree and four counts of attempted larceny in the first degree. These charges stemmed from four separate fires that burned four separate buildings during the months of June and July, 1995. The defendant owned each of these buildings. He was convicted, after a jury trial, on all counts and sentenced to a total effective sentence of 21 years.

The defendant appealed from the judgment of conviction to the Appellate Court. The appeal subsequently was transferred to this court pursuant to Practice Book § 65-4.[1] On appeal the defendant raises the following issues: (1) did the trial court properly deny the defendant's motion to sever the four informations for trial, where the defendant claimed that the evidence was long and complex and the factual scenarios were not presented in chronological order?; (2) did the trial court properly admit evidence of a prior unrelated $500,000 property loss sustained by the defendant, which was offered to demonstrate the defendant's knowledge of

---

[1] Practice Book § 65-4 provides in relevant part: "Any appeal or cause brought to the supreme court or the appellate court which is not properly within the jurisdiction of the court to which it is brought shall not be dismissed for the reason that it was brought to the wrong court but shall be transferred by the appellate clerk to the court with jurisdiction and entered on its docket. . . ."

how insurance companies settle claims, where the defendant claimed that the prejudice resulting from the introduction of the evidence outweighed its probative value, especially in light of the fact that a witness referred to the loss as being the result of a fire?; and (3) was sufficient evidence presented to establish that the fire at 95 South Main Street, Farmington, had been set intentionally? We affirm the defendant's convictions.

The jury reasonably could have found the following facts. The defendant was the owner of a television repair service and a landlord of several properties. He owned two properties in the Unionville section of Farmington, and properties in New Britain, Canton and Burlington. His television service business was housed in the property located in Farmington, at 95 South Main Street. The other properties of concern in the present appeal were the apartment building located at 34–36 Atlantic Street, New Britain, a small, single family house located at 18 Lake Street, Farmington, and a single family house located at 2 Forest Lane, Canton.

The defendant experienced severe financial difficulties, beginning in April, 1991, when he suffered a loss of $500,000 related to one of the properties he owned in Unionville. His financial troubles were so severe that he did not file personal income tax returns for the years 1991 through 1994, claiming that he had earned no personal income during that period. Furthermore, his properties were heavily encumbered by mortgages, judgments, foreclosures, liens and lis pendens. Overall, the defendant was in debt for almost $1,500,000.

On June 4, 1995, the defendant's properties located at 95 South Main Street, Farmington, and 34–36 Atlantic Street, New Britain, were severely damaged by fires. On July 20, 1995, the building located at 18 Lake Street, Farmington, was also set ablaze. On July 27, 1995, the

building located at 2 Forest Lane, Canton, was also heavily damaged by fire. The properties in New Britain, Farmington and Canton were leased to tenants, some of whom were in their homes when the fires occurred. Through investigation, it was determined that each of these fires had been set intentionally. The investigators concluded that the defendant had deliberately set these fires for the purpose of recovering the insurance proceeds.

The defendant was charged with three counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (3), one count of arson in the first degree in violation of § 53a-111 (a) (1)[2] and (3), and four counts of attempted larceny in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[3] and 53a-122 (a) (2).[4] These charges stemmed from the four separate fires and were consolidated for trial. At trial, the jury found the defendant guilty on all counts. The trial court, *McMahon, J.*, rendered judgment on the verdict, and sentenced the defendant to a total effective term of twenty-one years imprisonment. This appeal followed.

I

The defendant's first argument is that the trial court improperly denied his motion for severance. The state

[2] General Statutes § 53a-111 (a) provides in relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss . . . ."

[3] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for the commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny . . . and . . . (2) the value of the property . . . exceeds ten thousand dollars . . . ."

argues that joinder was appropriate. We conclude that the trial court properly denied the defendant's motion to sever the four related informations into separate trials. "The decision of whether to order severance of cases joined for trial is within the discretion of the trial court, and the exercise of that discretion [may] not be disturbed unless it has been manifestly abused. . . . It is the defendant's burden on appeal to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Boscarino*, 204 Conn. 714, 720–21, 529 A.2d 1260 (1987). The defendant does not meet that burden.

In *Boscarino*, we set forth a three part test by which to determine whether joinder of these four separate incidents was proper: (1) the four cases must involve discrete scenarios, easily separated by the jurors into four distinct events; (2) the crimes charged must not be of such a brutal or violent nature that the facts of one would necessarily prejudice the jury as to the others; and (3) the trial must not be so complex or lengthy that the jury would weigh the evidence against the defendant cumulatively instead of considering independently the evidence related to each separate incident. Id., 720–25. We conclude that the joinder in this instance satisfies the *Boscarino* test.

In the present case, the four incidents, though intrinsically related, are discrete events that easily could remain distinct in the jurors' minds. The fires occurred at different locations, in different kinds of structures, at different times. It was arguable that different methods of ignition were used and that the fires originated in different areas within the structures. Furthermore, the state argues that the linear progression of its argument was easy for the jury to follow and to maintain the distinction among the four fires. We agree with the

state. Our review of the transcript reveals that the fires were considered individually except during the direct and cross-examinations of the arson investigator, who had examined all four fires. Additionally, and perhaps most importantly, the trial court admonished the jury to keep the four incidents separate in their minds. "So we're going to treat—just like I'm going to instruct you in my charge, and I've told you already, you treat each . . . one of these cases . . . each count, each case, separately and distinctly. You don't just say because I think he did count four that he did count one. You treat each one and evaluate each one." This was also emphasized in the trial court's instructions to the jury: "Throughout the trial I have advised you of the necessity of considering each of the counts of the information separately. . . . I will advise you again that you must consider each alleged incident separately, and be sure to keep it distinct and separate from the others." "Unless there is evidence to the contrary, the jury is presumed to follow the court's instructions." *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 37, 761 A.2d 1268 (2000).

The second prong of the *Boscarino* test, that the crimes charged not be so brutal or violent as to compromise the jury's ability to maintain the distinction among them, is also satisfied. The evidence regarding the fires, which were admittedly extremely serious and potentially life threatening in nature, did not result in shocking descriptions of brutality or violence. No person was harmed by the fires set by the defendant. In fact, in some of the incidents, the defendant appeared to have gone out of his way to ensure that no one was in the building. The motive of the defendant was not to harm another brutally or violently: his objective was to collect insurance proceeds. This may be compared to the nature of the crimes in *Boscarino*, for example, which this court found too brutal to be joined: sexual assault,

assault and kidnapping. We concluded that "[t]he prejudicial impact of joinder in these cases was exacerbated by the violent nature of the crimes with which the defendant was charged." *State* v. *Boscarino*, supra, 204 Conn. 723. In this case, there was no such prejudicial impact.

The third prong of the test, whether the complexity and length of the trial would make it impossible for the jury to maintain an unbiased view of the four events and cause them to consider the evidence cumulatively rather than individually, is also met. As mentioned previously, the prosecution took care to clarify the distinction among the four fires and enable the jury to follow along with separate analyses. The trial lasted twelve days, with thirty-eight witnesses presented and approximately 160 exhibits introduced. Again, we compare this to *Boscarino*. There, the trial lasted ten weeks, fifty-five witnesses were presented and sixty-six exhibits were introduced. Id., 723–24. Despite the fact that there were more exhibits involved in the present case, we conclude that the length of the trial and number of witnesses in the present case are indicators of a trial that was neither too lengthy nor too complex for the jury to follow properly.

II

The defendant also claims that the trial court improperly admitted evidence of a prior loss of $500,000, which arose from a 1991 fire at his property at 91 South Main Street, Farmington. He claims that the prejudicial impact of that evidence outweighed its probative value. The trial court, finding that evidence highly probative of the defendant's knowledge of insurance claims settlements, decided that witnesses could use the word "loss" when referring to it but were not permitted to use the

word "fire." The defendant did not object to this ruling[5] and, therefore, waived his right to raise the claim on appeal. Furthermore, the defendant's claim fails to fulfill the second prong of the test of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] For these reasons, we need not and therefore decline to consider this claim further.

### III

The defendant's third claim is that there was insufficient evidence presented to the jury to establish that the fire at 95 South Main Street was set intentionally. He claims that he therefore was deprived of his constitutional right to a fair trial under both the fourteenth amendment to the United States constitution[7] and article first, § 8, of the Connecticut constitution[8] and that he is entitled to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40.[9] The state argues that the evidence

[5] The defendant did object, at trial, to a witness' reference to "a fire at 91 South Main Street." He did not, however, object to the court's ruling regarding the permissible use of the word "loss," which is the subject of his claim here.

[6] *State* v. *Golding*, supra, 213 Conn. 239–40, established the test necessary for a defendant to prevail on a claim of constitutional error not preserved at trial: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists . . . and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

[7] The fourteenth amendment to the United States constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

[8] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[9] This court, citing *Jackson* v. *Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that any claim that a defendant has been found guilty on the basis of insufficient evidence is necessarily a claim of constitutional magnitude. "We believe that *Jackson* v. *Virginia*, supra, [319] compels the conclusion that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. There being no

presented was sufficient to demonstrate beyond a reasonable doubt that the defendant intentionally set the fire at 95 South Main Street. We agree with the state.

The defendant claims that there was an insufficiency of evidence for the jury to find him guilty, but he is really arguing that the jury considered the wrong evidence, not that there was an inadequate amount of evidence. The defendant's argument is limited to his characterization of the testimony of two of the state's witnesses. One, Robert Warner, a deputy fire marshal, testified that the cause of the fire was "inconclusive," because there was nothing found in the debris that could tell the investigators what was the cause. The defendant also examined the testimony of James Wolfe, a state police officer, who stated that his conclusion that the fire had been set intentionally was based upon the fact that all accidental and natural causes had been ruled out. On cross-examination, Wolfe admitted that, even though he had not found the remains of a cigarette filter, an unfiltered cigarette—which would leave nothing behind—could have been the cause of the fire. The defendant suggests that this undermined the previous testimony and created a reasonable doubt as to his guilt.

The defendant fails to mention the substantial amount of evidence regarding the fire at 95 South Main Street that does point toward his guilt. The state cites the direct and circumstantial evidence that the defendant had the financial motive and the logistic opportunity to set the fire. Evidence was presented by the prosecution's experts who opined that the fire had been set intentionally and where the fire's point of origin was located. The state also presented evidence that the

practical significance, therefore, for engaging in a *Golding* analysis of an insufficiency of the evidence claim, we will review the defendant's challenge to his conviction . . . as we do any properly preserved claim." *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993). Accordingly, the defendant is entitled to *Golding* review.

defendant behaved in a way that suggested a consciousness of guilt, in part by attempting to destroy significant financial records that revealed his dire financial straits and, hence, his motive for the fire. In sum, there was substantial evidence that would allow a jury to find the defendant guilty beyond a reasonable doubt. "The jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391 (1992). The two pieces of testimony presented in the defendant's argument neither contradict his guilt nor require a finding of reasonable doubt.

The judgment is affirmed.