[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
PROCEDURAL HISTORY
The petitioner in the above-entitled action, Joseph Ancona, filed an Amended Petition For A Writ Of Habeas Corpus, dated April 11, 2002, in which he alleges in a single count[1] that his trial attorney rendered him ineffective assistance of counsel in his underlying criminal case. The petitioner essentially makes two claims of ineffective assistance.[2]
First, he alleges that his trial counsel failed to investigate an defense when a minimally effective attorney would have done so; and second, he alleges that his trial counsel failed to determine whether the petitioner was competent to decline a favorable plea bargain offered by the state. The respondent argues that the petitioner has failed to prove that trial counsel's performance was deficient or that the petitioner was prejudiced by any unprofessional errors which might have been proven. In addition, the respondent argues that the court should not consider the petitioner's ineffectiveness claim regarding the plea bargain because the petitioner did not properly raise it in the amended petition.
The court presided at the habeas trial, held on August 16 and September 30, 2002, and each party subsequently submitted trial memoranda. After reviewing the habeas trial evidence, the trial memoranda and the applicable law, the court finds that the petitioner has failed to prove his claim that trial counsel was ineffective by failing to investigate the potential insanity defense. In addition, the court finds that the amended petition does not properly raise the ineffectiveness claim regarding the favorable plea bargain, and therefore this court cannot address it.
 FACTS
In the criminal trial underlying the habeas petition, the petitioner was convicted of four counts of first degree arson in violation of General Statutes § 53a-111,[3] four counts of attempted larceny in CT Page 3972 the first degree in violation of §§ 53a-49 and 53a-122 (a)(2), and sentenced to a total effective sentence of twenty-one years of imprisonment. The Supreme Court affirmed the conviction in State v.Ancona, 256 Conn. 214, 772 A.2d 571 (2001), which indicates that the jury reasonably could have found the following facts.
"The [petitioner] was the owner of a television repair service and a landlord of several properties. He owned two properties in the Unionville section of Farmington, and properties in New Britain, Canton and Burlington. His television service business was housed in the property located in Farmington, at 95 South Main Street. The other properties of concern in the present [habeas proceeding] were the apartment building located at 34-36 Atlantic Street, New Britain, a small, single-family house located at 18 Lake Street, Farmington, and a single-family house located at 2 Forest Lane, Canton.
The [petitioner] experienced severe financial difficulties, beginning in April 1991, when he suffered a loss of $500,000 related to one of the properties he owned in Unionville. His financial troubles were so severe that he did not file personal income tax returns for the years 1991 through 1994, claiming that he had earned no personal income during that period. Furthermore, his properties were heavily encumbered by mortgages, judgments, foreclosures, liens and lis pendens. Overall, the defendant was in debt for almost $1,500,000.
On June 4, 1995, the [petitioner's] properties located at 95 South Main Street, Farmington, and 34-36 Atlantic Street, New Britain, were severely damaged by fires. On July 20, 1995, the building located at 18 Lake Street, Farmington, was also set ablaze. On July 27, 1995, the building located at 2 Forest Lane, Canton, was also heavily damaged by fire. The properties in New Britain, Farmington and Canton were leased to tenants, some of whom were in their homes when the fires occurred. Through investigation, it was determined that each of these fires had been set intentionally. The investigators concluded that the [petitioner] had deliberately set these fires for the purpose of recovering the insurance proceeds." Id., at 216-17.
This court finds the following facts based on the credible evidence offered at the habeas trial. The petitioner was born in Italy in 1942 and emigrated to the United States in the early 1960s when he was about nineteen years old. According to Benjamin Ancona, Sr., the petitioner's older brother, the petitioner was severely burned in a fire before coming to this country and while here in Connecticut, experienced a loss of consciousness due to carbon monoxide poisoning in 1985. After the carbon monoxide poisoning, the petitioner had sporadic fainting spells, CT Page 3973 experienced mood swings, was unresponsive in conversations with his relatives and became very interested in religion. Starting in the late 1980s or early 1990s, the petitioner began attending church often and his thoughts became focused on the subjects of Jesus Christ, Satan, heaven and hell. He would periodically claim that he could see and speak with Jesus and that the apocalypse was coming. His familial relationships became strained as a result of his religious beliefs and he had little contact with his older brother between 1993 and 1995.
The petitioner pleaded guilty to fourth degree sexual assault in January 1996, and was sentenced to probation. His probation went into violation status due to his failure to cooperate with sex offender treatment and he was eventually continued on probation and ordered to undergo psychotherapy. The petitioner received this psychotherapy from Jamshid Marvasti, M.D. between November 1996 and December 1998. The petitioner's nephew, Attorney Benjamin Ancona, Jr., represented him in the sexual assault case as well as the violation of probation case. Attorney Ancona also represented the petitioner in the arson case between February 6, 1996 and December 2, 1996. When Attorney Ancona represented the petitioner in the sexual assault case, the violation of probation case and the arson case, he was fully aware of the petitioner's behavior and religious beliefs, but never moved for a competency evaluation,[4] had the petitioner evaluated to determine the viability of an insanity defense[5] or filed a notice of intent to raise such a defense.[6]
During the approximate ten month period when Attorney Ancona represented his uncle in the arson case, Attorney Ancona engaged in pre-trial discovery and plea negotiations with the state's attorneys. At one point, he discussed a potential "no time" offer with the state, but ultimately received a judicial pre-trial offer of eight years to serve[7]
in September 1996. At that time, the petitioner rejected the offer and Attorney Ancona put the case on the jury list. The petitioner refused the plea bargain because he professed his innocence and believed that God would protect him. The petitioner became dissatisfied with his nephew's representation, discharged him, and in December 1996, replaced him with Attorney Theodore Pappas. During Pappas's tenure as counsel for the petitioner, Pappas never moved to have the petitioner evaluated for competency, had him evaluated for a potential insanity defense or filed the requisite notice to raise an insanity defense. The petitioner discharged Pappas and replaced him with Attorney Roger Anstey, who was the petitioner's lawyer from approximately August 1998 through April of 1999.[8] Anstey represented the petitioner at the arson trial, but the petitioner fired him and hired yet another attorney to represent him at sentencing. Before Anstey was replaced, however, he successfully moved to have the petitioner evaluated for competency. Anstey made this motion CT Page 3974 after the trial but prior to sentencing because when he went to see the petitioner in jail in preparation for the pre-sentence investigation report,[9] the petitioner became taciturn, withdrawn and concerned about the prison authorities listening in on his private conversations. After seeing this change in the petitioner's behavior, Anstey asked for a written competency evaluation to ensure a "decent" pre-sentencing report for his client. Anstey believed that the petitioner's changed behavior flowed from the latter's unhappiness with the guilty verdict.
Prior to the criminal trial, which commenced on January 25, 1999, Anstey reviewed the contents of the states' file, including the police reports, expert reports, witness statements and photographs. He also reviewed a July 28, 1995 civil deposition transcript in which the petitioner testified about insurance loss claims he made in relation to two of the subject fires in the criminal case. Anstey spent between twenty and twenty-five hours speaking with the petitioner about the evidence, the potential defenses and the maximum prison sentence that could be imposed in the event of a conviction. Anstey also spoke with the petitioner about at least two defenses which were actually employed at trial, one based on a claim that the fires were "natural" (accidental) and the other being an alibi defense. Anstey and the petitioner also discussed raising a third-party culpability defense, but the lawyer did not pursue it because the petitioner did not produce any evidence which might support such a claim. The petitioner, however, did approve the strategies which were actually used at trial by cooperating with the public adjustor who testified as a defense expert and by providing Anstey with the names of alibi witnesses who testified. At all times prior to trial, the petitioner assisted Anstey in preparing the defense, communicated with him in a rational manner and understood the nature of the criminal court proceedings. Anstey never saw the petitioner behave in a bizarre or paranoid fashion. He did notice that the petitioner was an extremely religious man who often read the Bible, but did not perceive this behavior as an indication of mental illness. The petitioner appeared to be mentally healthy, competent pursuant to the relevant legal standards and in control of his actions.
While preparing for trial, Anstey negotiated a plea offer of two years to serve.[10] Both Anstey and Attorney Ancona, who frequently spoke with Anstey about the petitioner's case and agreed that the offer was favorable, encouraged the petitioner to accept it, but the petitioner refused it because he insisted he was innocent. The petitioner knew the consequences of rejecting the offer. He even signed a letter, given to him by Anstey, indicating that he could be imprisoned for 120 years if convicted. CT Page 3975
When Attorney Ancona spoke with Anstey before trial about the petitioner's case and the two-year offer, Attorney Ancona did not express his concerns about his uncle's mental health or suggest that Anstey have the petitioner evaluated by a mental health care professional for the purpose of investigating a psychiatric defense. Nor is there any evidence that prior to trial any of the petitioner's other family members or Pappas expressed such concerns or made such suggestion to Anstey.
After the jury was selected and the evidence started in January 1999, Marvasti faxed copies of the petitioner's signed release form and psychiatric treatment notes to Anstey. There is no evidence, however, that Anstey requested such records. Anstey testified that he did not recall doing so and the release form does not indicate by whom the records were requested. It is clear, however, that Anstey received and probably reviewed such records, which are mostly illegible, on or about February 4, 1999 while the petitioner's criminal trial was in progress.
 DISCUSSION
The petitioner first claims that his trial attorney rendered him ineffective assistance by failing to investigate a potential insanity defense when counsel knew or should have known about that potential defense. The standard of review is well settled in cases involving a claim of ineffective assistance of counsel. "To prevail on a claim of ineffective assistance of counsel, a habeas petitioner generally must set forth evidence establishing two elements. First, the [petitioner] must show that counsel's performance was deficient . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). . . To establish prejudice, a [petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.)Ramos v. Commissioner of Correction, 67 Conn. App. 654, 665, 789 A.2d 502, cert. denied, 260 Conn. 912, 796 A.2d 558 (2002).
"The first component of the Strickland test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness . . . In Strickland, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . CT Page 3976 . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . ." Doehrer v. Commissioner of Correction, 68 Conn. App. 774, 778,795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002).
In addition, the right of a criminal defendant to effective assistance of counsel includes a requirement that counsel conduct a meaningful investigation of potential mental incapacity defenses when he knows or should know about evidence which will support such claimed defenses. SeeCopas v. Commissioner of Correction, 234 Conn. 139, 662 A.2d 718 (1995).
In the present case, the petitioner has failed to prove that Anstey's failure to investigate an insanity defense fell below an objective standard of reasonableness. In viewing Anstey's conduct from his perspective at the time of the alleged ineffective assistance, the court finds that he had no reason to investigate an insanity defense prior to trial. The petitioner appeared to be a religious man but never behaved in a bizarre or paranoid manner. He seemed to understand the nature of the criminal proceedings and assisted Anstey in preparing the defense. He communicated well with counsel, insisted on his innocence and signed a document rejecting a favorable plea agreement despite being urged to accept it by counsel and his nephew, Attorney Ancona. In addition, none of the petitioner's other lawyers or his family members ever expressed any concern about the petitioner's mental health. More specifically, since the petitioner's nephew had represented him for ten months in the arson case and had spoken often with Anstey about the case without mentioning any psychiatric problems, there simply was no reason for Anstey to investigate an insanity defense.
The petitioner argues that Anstey, upon receipt of the psychiatric records, should have asked for a continuance in order to investigate the potential insanity defense. This argument lacks merit. Anstey received copies of Marvasti's illegible, handwritten notes on February 4, 1999, well after the time within which the practice book requires the defense to notify the state regarding its intent to pursue an insanity defense.[11] Further, it is unlikely that the trial judge CT Page 3977 would have granted a continuance in any event. At the time Anstey received the psychiatric records, the petitioner's case had been pending for approximately thirty months and two other lawyers had appeared in the file without raising an issue regarding the petitioner's mental state. It is also important to note that the parties were in the midst of presenting evidence in a jury trial. Although it is within the discretion of the trial court to grant continuance requests under those circumstances, such requests are disfavored. See Statev. Bradley, 39 Conn. App. 82, 663 A.2d 1100
(1995). Therefore, even if Anstey had requested a continuance, the request probably would have been denied.
The petitioner relies on Copas v. Commissioner of Corrections, supra, in support of his claim that Anstey should have investigated the potential insanity defense. That decision is factually different than petitioner's case and, therefore, does not help him. In Copas, the petitioner pleaded guilty to the charge of murder. Before entering his plea, the petitioner and his mother informed counsel about the petitioner's extensive history of mental and emotional problems as well as his history of substance abuse. After reviewing the petitioner's school records and having a telephone conversation with a psychiatrist who once met with the petitioner, counsel decided that there was no viable defense based on the petitioner's mental condition and did not seek an additional mental health evaluation. The Supreme Court determined that under the circumstances, counsel failed to render effective performance by failing to recognize the mental incapacity defenses and failing to conduct a meaningful investigation regarding such defenses. The factual circumstances in Copas, however, do not exist in the petitioner's case. Neither the petitioner nor any of his family members ever told Anstey that the petitioner might be mentally ill. More specifically, Attorney Ancona never told Anstey about the petitioner's history of psychiatric treatment although Attorney Ancona was aware of it.[12] In addition, there was nothing in the petitioner's behavior which suggested to Anstey that the petitioner ever had mental health issues. There is absolutely no credible evidence that prior to trial, Anstey had any reason to investigate any issues related to the petitioner's mental health.[13]
Furthermore, by the time Anstey received the psychiatric records from Marvasti, it was too late to pursue an insanity defense because the criminal trial had started and it was unlikely that the trial judge would have granted a continuance to investigate that defense.
Even assuming that Anstey performed ineffectively by not investigating an insanity defense, however, the petitioner's claim still must fail if he has not met his burden of proof under the prejudice prong of theStrickland test. See Ramos v. Commissioner of Correction, supra. The CT Page 3978 following additional facts are necessary to address the issue of prejudice. At the habeas trial, the petitioner offered testimony by Dr. Walid Jaziri, a psychiatrist who treated him for a three-month period between March and June in 2001. Jaziri spoke with the petitioner during fourteen one-hour sessions, consulted with his family about his behavior and reviewed a 1986 letter from a medical doctor about the petitioner's fainting spells. The only psychiatric record that Jaziri reviewed, however, was the petitioner's 1999 competency evaluation which, in declaring him mentally competent, indicated that he was logical, coherent and goal-oriented. Based on this information, Jaziri opined that the petitioner suffered from bipolar disorder with psychotic features and depression. According to Jaziri, the petitioner's mental health condition developed over a period of years and was probably in place for years before the 1995 arson fires. The condition included episodes of hallucinations, impulsiveness, recklessness and a preoccupation with religion, but Jaziri was unable to say whether the petitioner experienced any of the symptoms at any particular time and did not say whether the petitioner's mental problems qualified him for the insanity defense. Specifically, Jaziri could not say whether the petitioner suffered from any psychiatric symptoms at any particular time prior to examining the petitioner in 2001. Further, Jaziri failed to offer any credible testimony that at the time of the crime and as a result of mental disease or defect, the petitioner was unable to appreciate the wrongfulness of his acts or to control his conduct within the requirements of the law. Given this lack of credible evidence supporting an insanity defense, it is not reasonably probable that the defense would have resulted in a different outcome at the criminal trial. Since it is unlikely that the result at trial would have been any different, the petitioner's ineffective assistance claim must fail.
The petitioner's second claim is that his lawyer rendered ineffective assistance due to his failure to determine whether the petitioner was mentally competent to reject the favorable plea bargain offered to him. Although the petitioner argues in support of this claim in his brief, the court does not address it because it is not properly raised in the amended petition. "While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Citations omitted; internal quotation marks omitted.) Jenkins v.Commissioner of Correction, 52 Conn. App. 385, 406, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999); see also Holley v.Commissioner of Correction, 62 Conn. App. 170, 181, 774 A.2d 148 (2001). "The principle that a [petitioner] may rely only upon what he has alleged is basic . . . It is fundamental in our law that the right of a CT Page 3979 [petitioner] to recover is limited to the allegations of his complaint . . . What is in issue is determined by the pleadings and these must be in writing . . . Once the pleadings have been filed, the evidence proffered must be relevant to the issues raised therein . . . A judgment upon an issue not pleaded would not merely be erroneous, but it would be void." (Citations omitted; internal quotation marks omitted). See Wright v.Hutt, 50 Conn. App. 439, 449-50, 718 A.2d 968 (1998). Since the petitioner did not raise the issue of his competency to reject a favorable plea agreement in the amended petition, this court is without authority to decide the merits of the claim and must dismiss it. See Cupe v.Commissioner of Correction, 68 Conn. App. 262, 791 A.2d 614 (2002).
 CONCLUSION
The credible evidence does not show that trial counsel represented the petitioner in a deficient manner by failing to investigate the petitioner's mental health condition and a potential insanity defense. The credible evidence, to the contrary, shows that prior to trial, counsel had no reason to believe that the petitioner suffered from any type of mental incapacity and therefore had no reason to have the petitioner evaluated for purposes of pursuing an insanity defense. In addition, by the time counsel received information that the petitioner had been treated by a psychiatrist, the petitioner's criminal trial had started and it was too late to raise an insanity defense. Even in the unlikely event that counsel had succeeded in getting the trial continued to do a mental health investigation, the credible evidence does not establish a reasonable probability that an insanity defense would have resulted in a different trial outcome. Hence, the petitioner's first ineffective assistance claim based on counsel's failure to investigate the petitioner's mental health status and raise an insanity defense is dismissed.
The petitioner's second ineffective assistance claim, based on counsel's failure to investigate whether the petitioner was mentally competent to reject a favorable plea bargain, was not included in his amended petition and therefore is not properly before the court for a decision on the merits. Hence, the second claim is dismissed.
White, J.