******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom ESPINOSA, J., joins, dissenting. I disagree with the majority's conclusion that the defendant, A. M., is entitled to reversal of his convictions as a result of statements made by the assistant state's attorney (prosecutor) during closing arguments at the defendant's trial. The majority concludes that these statements, in which the prosecutor noted that the defendant had not testified, violated General Statutes § 54-84, as well as the defendant's fifth amendment right to remain silent,[1] and that these violations were not harmless. Although I agree that the statements violated § 54-84, I cannot conclude that the statements violated the defendant's fifth amendment rights because they did not "suggest [that the] defendant's silence [was] evidence of *guilt*." (Emphasis in original; internal quotation marks omitted.) *Portuondo* v. *Agard*, 529 U.S. 61, 69, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000). Nevertheless, even if the prosecutor's statements did violate the fifth amendment, I am convinced beyond a reasonable doubt that any such violation was insignificant and had no impact on the trial, and thus was harmless. Although the prosecutor referenced the fact that the defendant had not testified, she did not ask or imply that the jury hold the defendant's decision not to testify against him, and the prosecutor did not otherwise convey to the jury anything it had not already observed itself. Indeed, the absence of any prejudice in this matter is demonstrated by the lack of any objection from defense counsel to the prosecutor's comments or any request for a specific curative instruction at trial. Moreover, any possibility that the jury might use the defendant's silence against him as a result of the prosecutor's comments was dispelled by the court's instructions, in which the court expressly directed the jury that it could *not* infer guilt from the defendant's decision not to testify. To conclude that the jury nevertheless misused the defendant's silence in the face of this instruction requires a conclusion that the jury disregarded the instruction. We presume, however, that the jury followed the court's instructions in the absence of evidence to the contrary; see, e.g., *State* v. *Ancona*, 256 Conn. 214, 219, 772 A.2d 571 (2001); and, in the present case, there is no such evidence to the contrary. Finally, although the majority viewed the state's case as weak—presumably making the jury more susceptible to using improper considerations to decide the case—a review of the record dispels any such conclusion. For these reasons, I am convinced that the prosecutor's statements had no impact on the outcome of the trial and, thus, were harmless. Therefore, I respectfully dissent.

In analyzing the comments in the present case, I am convinced that they did not influence the jury's decision. Even if the prosecutor violated the defendant's

fifth amendment rights, the defendant is still not entitled to a new trial if the state establishes that the violation was harmless beyond a reasonable doubt. See, e.g., *State* v. *Payne*, 303 Conn. 538, 563–64, 34 A.3d 370 (2012). "[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations . . . ." (Citations omitted.) *United States* v. *Hasting*, 461 U.S. 499, 509, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983). To determine whether the comments were harmful, we must determine whether the comments prejudiced the defendant. "The question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Angel T.*, 292 Conn. 262, 287, 973 A.2d 1207 (2009). In determining whether the statements had any impact on the outcome, the statements must be analyzed in the context of the trial as a whole. See, e.g., *State* v. *Luster*, 279 Conn. 414, 442, 902 A.2d 636 (2006).

When the statements at issue in the present case are examined in context, it becomes clear that they were harmless. The prosecutor did not ask the jury, explicitly or implicitly, to hold the defendant's silence against him but, instead, reminded the jury that it could consider the defendant's statements to the police in evaluating the defendant's credibility. Specifically, in the first statement at issue, the prosecutor stated: "This is the other thing. Counsel did not present his client to testify. That's their right guaranteed by the constitution if any of us were accused. But there is evidence as to things that [the defendant] said. His sworn statement. Also, testimony by a couple of police officers as to what he said to them, and that's before you." In the second statement at issue, the prosecutor stated: "You've got to look at the credibility of the defendant as well. I mean, he didn't testify. Again, that's his right, but there are some statements that are contained in the evidence. One [of] which that I've just referred to was his sworn statement as well as some statements by the police that he made the night he was arrested. Statements like, 'I've never seen her naked.' Three year olds in the house? We're all parents. Come on, never? Never? Never touched or tickled her ever. Really? Does that make sense?"

These statements, even if improper, were isolated and not egregious. The prosecutor never asked the jury to draw a negative inference from the defendant's failure to testify or suggested that the jury should draw a negative inference from his silence. Instead, the prosecutor's statements were meant to convey to the jury that, even though the defendant did not testify at trial, his statements to the police were contained in the record, and that the jury could use the statements to assess the defendant's credibility. Apart from these two

passing references, there were no other instances of prosecutorial impropriety, and the comments at issue were benign. "[M]oreover . . . [a defendant is not entitled to prevail when] the claimed [impropriety] was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial." (Internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 442. The prosecutor made no other allegedly improper statements during the trial, so her statements do not constitute a pattern of repeated conduct and thus do not warrant reversal.[2]

Furthermore, the prosecutor did not tell the jurors anything that they had not already perceived. The statements were made during closing arguments, and, at that time, the jury would have been well aware that the defendant had not testified and that no testimony from the defendant would be forthcoming.

The prosecutor's comments would not have influenced the jury for another reason, namely, that they conveyed precisely the same information that the trial court provided to the jury in its instructions on the law. In its jury charge, the trial court expressly reminded the jury that "the defendant has elected not to testify in this particular case," that the defendant "is under no obligation to testify," and that "[h]e has a constitutional right that is protected by the [United States] as well as the Connecticut constitutions not to testify . . . ." The prosecutor's comments mirrored this instruction.

Contrary to the majority's assertion, the prosecutor's comments in this case are nothing like the comments in the cases on which the majority relies, in which reversible error was found. For example, in *Griffin* v. *California*, 380 U.S. 609, 610–11, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), both the prosecutor and the trial court told the jury that it could draw inferences of guilt from the defendant's silence. In the present case, the prosecutor merely sought to draw attention to the defendant's statements that were contained in the record. The prosecutor made no assertion that the jury should hold the defendant's failure to testify against him.

The majority incorrectly asserts that "the egregiousness of the remarks in this case [was] equal to, if not greater than" the egregiousness of the prosecutor's remarks in *State* v. *Maguire*, 310 Conn. 535, 78 A.3d 828 (2013). This case is nothing like *Maguire*. In that case, this court granted a new trial to the defendant, Michael G. Maguire, because the prosecutor repeatedly told the jury that Maguire was asking the jury to condone child abuse and to find that child abuse that happens in secret is legal, and also told the jury that defense counsel was a liar. Id., 555, 576. In *Maguire* the prosecutor's remarks were meant to inflame the passions of the jurors, but, in the present case, the prosecutor's

statements were merely an attempt to remind the jurors of the evidence in the record that they could consider.

The majority also never explains how the prosecutor's statements in the present case were harmful. Instead, the majority concludes that the statements were severe simply because the statements violated the fifth amendment and § 54-84. The mere existence of a constitutional violation, however, is not indicative of harmful error. See, e.g., *United States* v. *Hasting*, supra, 461 U.S. 509. The majority never explains how the statements could have prejudiced the jury or even what the prejudice is. In effect, the prosecutor stated to the jury that the defendant's credibility could still be assessed despite the fact that he failed to testify, which is the defendant's right, by considering his statements to the police. The two inferences that can be drawn from this are, one, the jury *cannot* assess the defendant's veracity from the fact that he failed to testify, and, two, the jury *can* assess the credibility of his statements to the police.

The lack of any prejudicial effect is further demonstrated by defense counsel's failure to object to the statements at trial. If the prosecutor's statements were truly as severe as the majority would have us believe, surely, defense counsel would have moved for a mistrial[3] or at least would have objected to these statements. After all, counsel made another unrelated objection to the prosecutor's closing argument. The reason there was no objection is simple: no one perceived the statements as prejudicial.

When considering the impact of a prosecutor's improper comments, "this court consider[s] it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. . . . A failure to object demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 443; see also *State* v. *Angel T.*, supra, 292 Conn. 289 ("because the defendant failed to object or to seek curative measures at trial . . . this factor support[ed] the state's contention that the prosecutorial impropriety was not particularly severe").

Notably, after the prosecutor's rebuttal argument, defense counsel did make an unrelated objection after the prosecutor showed the jury a trial transcript that had not been entered into evidence. Despite raising this objection to the state's rebuttal, counsel made no mention of the prosecutor's comments regarding the defendant's decision not to testify. This strongly suggests that defense counsel did not view either of the prosecutor's comments as being prejudicial to the defendant and, further, that the statements had no meaningful impact on the jury. See, e.g., *State* v. *Lemon*, 248 Conn. 652, 665, 731 A.2d 271 (1999) (lack of objec-

tion to statements later challenged on appeal is evidence that counsel did not deem statements to be prejudicial when they were made).

The majority places virtually no weight on defense counsel's failure to object to an impropriety that the majority would now have us believe was "particularly egregious." Because we are able to review only a transcript of the words used at trial, we must rely on the parties' actions during the trial, and defense counsel's failure to object indicates that the prosecutor's comments had no discernible impact on those in the courtroom who witnessed the argument as it unfolded. The majority excuses defense counsel's failure to object by classifying the failure as a tactical decision. The majority claims that defense counsel may have chosen not to object because counsel did not wish to draw the jury's attention to the prosecutor's statements. There simply is no rational reason why competent counsel would have ignored these statements if they actually were "particularly egregious." If defense counsel did not want to object in the presence of the jury because he thought that it would highlight the fact that the defendant did not testify, he could have objected after the jury left the courtroom. In fact, defense counsel *did object* to other aspects of the rebuttal argument *after* the jury left the courtroom. Therefore, defense counsel's failure to object is " 'highly significant' " evidence that the prosecutor's statements were not severe. *State* v. *Luster*, supra, 279 Conn. 443. Even if we assume that defense counsel chose not to object for some inconceivable tactical reason, appellate review of prosecutorial impropriety claims "is not intended to provide an avenue for the tactical sandbagging of our trial courts but, rather, to address gross prosecutorial improprieties that clearly have deprived a criminal defendant of his right to a fair trial." *State* v. *Ceballos*, 266 Conn. 364, 414–15, 832 A.2d 14 (2003).

Even if the prosecutor's comments could have caused harm, which they did not, the trial court's instructions dispelled that risk. Although defense counsel did not object to the comments or ask for any curative instructions, the trial court, pursuant to § 54-84 (b), expressly instructed the jury that it could "draw no unfavorable inferences from the defendant's choice not to testify in this particular instance." If the prosecutor's statements had some effect on the jury, the court's instruction cured that effect. In *State* v. *Jones*, 320 Conn. 22, 38–39, 128 A.3d 431 (2015), we concluded that general jury instructions that directly addressed prosecutorial improprieties ameliorated those improprieties. In fact, in nearly all cases in which defense counsel failed to object to and request a specific curative instruction in response to a prosecutorial impropriety, and the court's general jury instruction addressed that impropriety, we have found that the court's general instruction cured the impropriety. See, e.g., id.; *State* v. *Luster*, supra,

279 Conn. 446; *State* v. *Warholic*, 278 Conn. 354, 402, 897 A.2d 569 (2006); *State* v. *Stevenson*, 269 Conn. 563, 597–98, 849 A.2d 626 (2004). The court's instructions in the present case directly addressed the prosecutor's improper comments, unlike in the cases that the majority relies on, namely, *Angel T.* and *Maguire*, in which the jury instructions did not address all aspects of the prosecutorial improprieties.[4]

The jury instructions in the present case specifically addressed the defendant's failure to testify, informing the jury that it was, as the prosecutor had stated, the defendant's constitutional right not to testify. The trial court also instructed the jury that it was not allowed to draw any adverse inference from the defendant's failure to testify. We do not assume, in the absence of evidence to the contrary, that jurors will ignore the court's instructions. See, e.g., *State* v. *Ancona*, supra, 256 Conn. 219.[5]

The majority claims that "no general charge would have sufficed" because the remarks were "so egregious . . . ." For the foregoing reasons, I disagree with the majority's claim that the prosecutor's remarks were egregious. But for the fact that the comments were a technical violation of § 54-84, they were not improper at all, and, therefore, the court's general jury instruction completely cured the impropriety. The reason is simple: the jury instructions and the statements by the prosecutor were correct statements of the law.

Finally, although the majority claims that the state's case was so weak that the prosecutor's statements likely impacted the jury's decision despite any curative instructions, a review of the record belies such a conclusion. The majority contends that the prosecutor's statements were harmful because the state's case was weak and turned entirely on matters of credibility, such that the prosecutor's statements might have led the jury to discredit the defendant and to find him guilty. The majority, however, does not analyze the strength of the state's evidence in the present case. Instead, the majority cites *State* v. *Ceballos*, supra, 266 Conn. 364, in which we observed that "a child sexual abuse case lacking conclusive physical evidence, when the prosecution's case rests on the credibility of the victim . . . is not particularly strong." (Internal quotation marks omitted.) Id., 416.

I disagree that *Ceballos* supports the majority's broad contention, namely, that a lack of physical evidence necessarily makes the state's case so weak that it automatically weighs in favor of the defendant. In *Ceballos*, we also stated that the "absence of conclusive physical evidence of sexual abuse does not automatically render [the state's] case weak . . . ." Id.

Moreover, my review of the trial evidence convinces me that the state's case was strong enough that the

comments would not have influenced the jury's verdict or impacted the outcome of the proceedings. Although the outcome of the present case turned largely on the credibility of the victim's accusations and the defendant's denials, the state presented evidence to support the victim's credibility and additional evidence to impeach the truth of the defendant's statements to the police and the defendant's general character.

The majority ignores the fact that the jury had a substantial opportunity to evaluate the victim's credibility on the basis of her in-court demeanor. The victim testified on three separate occasions, and defense counsel was able to cross-examine her regarding all of the allegations that she had made during her forensic interview. Defense counsel questioned the victim about each specific allegation of abuse contained in the video-recorded interview, and the victim answered all of defense counsel's numerous questions. The state also presented expert testimony indicating that it was not unusual for a young child to be uncertain about precisely when she had been abused.

Later, defense counsel called the victim's mother to testify regarding the defendant's good character, but much of her testimony was contradictory. The victim's mother testified that she had never seen the defendant "be fresh around women" but later admitted that the defendant had a history of violent behavior toward women. Specifically, she acknowledged that she had once called the police after the defendant punched her in the face. She also testified that, on a separate occasion, another woman had told her that the defendant was having an affair; when the defendant found out, he went to the woman's home and smashed her car windshield.

The testimony of the victim's mother was also inconsistent with the defendant's own statements to the police. In his sworn statement to the police, the defendant claimed that he never had been alone in the home with the victim since she made her first allegations. Contrary to the defendant's claim that he was never in the home alone with the victim after August, 2009, the victim's mother stated that there were still times when the defendant was alone with the victim.

The prosecutor also pointed out that the defendant's own statements to the police were contradictory. The defendant claimed that he had not hugged or kissed the victim since she was "very young . . . ." In the very same statement, he said that, after the victim's mother had kicked him out of her home, he returned to confront the victim about her allegations. The defendant then stated that, upon doing so, the victim apologized to him, *they hugged*, and then went to the mall where he and the victim held hands.

Considering that defense counsel failed to object to

the prosecutor's comments and that the trial court instructed the jury that it could not consider the defendant's decision not to testify, I am convinced beyond a reasonable doubt that the prosecutor's comments did not impact the jury's decision. The jury had before it ample evidence from which to consider the credibility of the victim and the strength of the defendant's case. The jury was able to observe the victim's demeanor in court during her testimony, including during extensive cross-examination. Additionally, the state presented evidence to discredit the victim's mother's description of the defendant's character and to impeach the credibility of the defendant's own statements to the police.

For all of the foregoing reasons, I would conclude that the prosecutor's statements did not impact the outcome of the trial and, thus, were harmless. Accordingly I would reverse the judgment of the Appellate Court, and, therefore, I respectfully dissent.

[1] The fifth amendment privilege against self-incrimination is made applicable to state prosecutions through the due process clause of the fourteenth amendment. See, e.g., *Malloy* v. *Hogan*, 378 U.S. 1, 3, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).

[2] The majority asserts that these two statements were "two too many" and also asserts that it "could not condone even one violation of such an extreme nature." The majority concludes that the remarks were frequent not because they were pervasive or repeated but, rather, because the prosecutor's comments violated the fifth amendment and § 54-84. Such a conclusion turns the meaning of the word "frequent" on its head. The majority's position means that this factor will always support reversal, because even a single violation would constitute a frequent occurrence.

[3] Defense counsel was not reluctant to move for a mistrial when he believed that doing so was appropriate. Throughout the course of the trial, defense counsel moved for a mistrial on five different occasions.

[4] The majority mentions that the court's charge on credibility related only to witnesses who testified at trial and not to the defendant's written statements to the police. This is irrelevant when determining the curative effect of the court's general jury instructions. The alleged impropriety was the prosecutor's reference to the defendant's failure to testify, not that the prosecutor asked the jury to examine the defendant's written statements.

[5] The jury's decision to find the defendant not guilty of one of the charges against him strongly indicates that the prosecutor's remarks did not lead the jury to condemn the defendant for his refusal to testify, and that the jury instead properly applied the court's instructions in reaching its verdict. See, e.g., *State* v. *Lucas*, 63 Conn. App. 263, 278–79, 775 A.2d 338, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001). The fact that the jury found the defendant not guilty on some of the charges against him "clearly demonstrat[es] the jurors' ability to filter out the allegedly improper statements and make independent assessments of credibility." *State* v. *Ciullo*, 314 Conn. 28, 60, 100 A.3d 779 (2014). Contrary to the majority's assertion, the defendant's acquittal is relevant because it shows that the jury did not blindly condemn the defendant for his failure to testify.