******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
JEFFREY TODD PALUMBO
(AC 41509)

DiPentima, C. J., and Alvord and Eveleigh, Js.

*Syllabus*

Convicted of the crimes of sexual assault in the fourth degree, sexual assault in the first degree, and risk of injury to a child in connection with his alleged sexual abuse of the minor victim, the defendant appealed. Although the defendant's conviction related to two incidents involving the minor victim, during his trial there was testimony relating to two other alleged incidents of sexual abuse, one of which occurred while the defendant and the victim were hiking alone at a state park. After the defendant testified at trial that, during the hike, there were other people around, the prosecutor asked him a series of questions that focused on whether he previously had told the police during an interview that there were other people around during the hike, and remarked that this was the first time that they were hearing about that information. On appeal, the defendant claimed, for the first time, that the questions referring to the trial as being the first time that the defendant mentioned that other people were in the same area during the hike violated his constitutional right to remain silent pursuant to *Doyle* v. *Ohio* (426 U.S. 610) by introducing evidence of his post-*Miranda* silence. Specifically, he claimed that the questions focused on his silence after he was arrested and received his *Miranda* warnings and, therefore, that his post-*Miranda* silence was used as evidence of guilt. *Held:*

1. The defendant's unpreserved claim that his constitutional right to remain silent pursuant to *Doyle* was violated was unavailing; it was clear from the record that the questions referring to the trial as the first time that the other hikers were mentioned pertained to the defendant's pre-*Miranda* interview that occurred on March 31, 2014, and, therefore, the defendant having failed to demonstrate that an alleged constitutional violation existed, his unpreserved claim failed under the third prong of the test set forth in *State* v. *Golding* (213 Conn 233).

2. The defendant could not prevail on his claim that because the prosecutor's questions sought to elicit evidence of his post-*Miranda* silence, they amounted to prosecutorial impropriety that violated his due process rights: this court has determined that certain of the questions did not violate *Doyle* and the defendant did not argue how those questions would otherwise amount to prosecutorial impropriety, and with respect to the prosecutor's question of whether the defendant told anyone about the presence of the other hikers in the time period between a pre-*Miranda* interview and his arrests in September and November, 2014, even if that question was improper, it did not deprive the defendant of his due process right to a fair trial, as the claimed impropriety was not pervasive throughout the trial and was confined to a single question that related to uncharged misconduct, it was not central to a critical issue in the case or the defendant's theory of defense, defense counsel objected to the question before it was answered and the objection was sustained, the court's general instructions were sufficiently curative, and the state's case was not particularly strong.

Argued March 4—officially released October 8, 2019

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of sexual assault in the fourth degree and risk of injury to a child, brought to the Superior Court in the judicial district of New London, and substitute information, in the second case, charging the defendant with the crimes of sexual assault in the first degree and risk of injury to a child, brought to

the Superior Court in the judicial district of Windham, geographical area number eleven, where the court, *Seeley, J.*, granted the state's motion for joinder; thereafter, the matter was tried to the jury; verdicts and judgments of guilty, from which the defendant appealed. *Affirmed.*

*Richard Emanuel*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Anne F. Mahoney*, state's attorney, and *Marissa Goldberg*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jeffrey Todd Palumbo, appeals from the judgments of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims, pursuant to *Doyle* v. *Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), that the state (1) violated his constitutional right to remain silent by introducing evidence of his post-*Miranda*[1] silence and (2) engaged in prosecutorial impropriety by attempting to elicit evidence of his post-*Miranda* silence.[2] We affirm the judgments of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. The defendant started dating the victim's mother, K, on August 8, 2008, when the victim was three.[3] The defendant moved into an apartment in Montville with K and the victim in March, 2009, when K became pregnant with the defendant's child. The defendant continued living there with K and the victim after their son, T, was born, and his older son from a previous relationship, D, moved in with K and the victim as well. The defendant moved out of K's apartment in May, 2012. However, the defendant still had contact with the victim because he and K shared custody of T, and the defendant and D would occasionally go to K's apartment to watch movies and play video games with K, T, and the victim.

K, T, and the victim also would visit the defendant and D at the defendant's apartment in Danielson. Sometimes K would leave the victim alone with the defendant while she ran errands. On one occasion at the defendant's apartment, the victim was in the defendant's bedroom lying down at the edge of his bed. The defendant told her to take her pants off and she did. She saw that the defendant's "front private went through a hole in his underwear." He told her to touch it. She testified that she did, that it felt "squishy," and that the defendant then touched his penis to her vagina, making "skin to skin" contact. The victim said that it hurt the middle of her vagina.

In December, 2013, the defendant and D went to K's apartment in Montville to watch movies and play video games. While K was outside smoking a cigarette, the victim was standing on the couch. The defendant put his hand inside the victim's pants and rubbed her vagina over her underwear. She told him to stop, but he did not. She told him that she was going to tell her mother, and he responded that her mother would not believe her. When K returned, the victim told K that the defen-

dant made her feel uncomfortable, and K told her to stay in K's bedroom and play on the computer.

When K learned from the victim's grandmother that the victim had told her cousin that she had been abused, K informed Nora Selinger, a school guidance counselor who the victim saw for counseling. After speaking with the victim, Selinger filed a report with the Department of Children and Families (department). The department then forwarded the report to the police.

On March 31, 2014, police officers went to the defendant's house and asked to talk to him about a case they were investigating. The defendant agreed to meet with the police at the police barracks where the police interviewed the defendant. The defendant did not receive *Miranda* warnings, and the interview was taped. On September 12, 2014, the defendant was given *Miranda* warnings and arrested on charges of sexual assault in the fourth degree and risk of injury to a child stemming from the December, 2013 incident at K's apartment in Montville. On November 12, 2014, he was given *Miranda* warnings and arrested on charges of sexual assault in the first degree and risk of injury to a child arising from his conduct in the bedroom of his apartment in Danielson. The two cases were consolidated for trial.

During the defendant's trial, there was testimony relating to two other alleged incidents when the defendant rubbed the victim's vagina over her underwear. The defendant was not charged for those incidents. One occurred at the defendant's apartment when K was not there, and the other occurred when the defendant and the victim were hiking alone at a state park.

The defendant elected to testify. On cross-examination, the state played portions of his March 31, 2014 police interview and questioned him about the interview and the hiking incident. The defendant testified that, during the hike, there were other people around. The state then asked the defendant a series of questions that focused on whether the defendant previously had told the police that there were other people "around" during the hike. Specifically, the state asked: (1) "That's the first time that we're hearing this. Isn't that correct?"; (2) "And this is the first time that we're hearing that information?"; and (3) "[B]etween March 31st of 2014 and your arrest in September in Montville and in November in—in Danielson, you never told anybody about that?"[4] Defense counsel objected to the last of these three questions, and the objection was sustained.

The jury found the defendant guilty of sexual assault in the first degree, sexual assault in the fourth degree, and two counts of risk of injury to a child. The court accepted the verdicts and sentenced the defendant to a total effective term of ten years mandatory incarceration followed by eight years of special parole. This

appeal followed.

I

The defendant claims that the two questions, referring to the trial as being the *first time* that the defendant mentioned that other people were in the same area during the hike with the victim, violated his constitutional right to remain silent pursuant to *Doyle* v. *Ohio*, supra, 426 U.S. 610, by introducing evidence of the defendant's post-*Miranda* silence. Specifically, the defendant argues that the two questions focused on the defendant's silence after he was arrested and received his *Miranda* warnings, and therefore his post-*Miranda* silence was used as evidence of guilt. We disagree.

"In *Doyle* [v. *Ohio*, supra, 426 U.S. 610] . . . the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. . . . Likewise, our Supreme Court has recognized that it is also fundamentally unfair and a deprivation of due process for the state to use evidence of the defendant's post-*Miranda* silence as affirmative proof of guilt . . . . *Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. . . . Because it is the *Miranda* warning itself that carries with it the promise of protection . . . the prosecution's use of [a defendant's] silence *prior* to the receipt of *Miranda* warnings does not violate due process. . . . Therefore, as a factual predicate to an alleged *Doyle* violation, the record must demonstrate that the defendant received a *Miranda* warning prior to the period of silence that was disclosed to the jury. . . . The defendant's claim raises a question of law over which our review is plenary." (Emphasis in original; internal quotation marks omitted.) *State* v. *Reddick*, 174 Conn. App. 536, 553, 166 A.3d 754, cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), cert. denied,     U.S.     , 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018).

The defendant acknowledges that he did not preserve his *Doyle* claim but asserts that it is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v.

*Golding*, supra, 239–40.

Upon our review of the record, it is clear that the two questions, in which the state referred to the trial as the "first time" that the other hikers were mentioned, pertained to the defendant's March 31, 2014 pre-*Miranda* interview. "[E]vidence of prearrest, and specifically pre-*Miranda*, silence is admissible to impeach the testimony of a defendant who testifies at trial, since the rule of *Doyle* . . . is predicated on the defendant's reliance on the implicit promise of the *Miranda* warnings." *State* v. *Angel T.*, 292 Conn. 262, 286 n.19, 973 A.2d 1207 (2009); see also *State* v. *Esposito*, 223 Conn. 299, 319, 613 A.2d 242 (1992) ("prosecution's use of silence prior to the receipt of *Miranda* warnings does not violate due process"). Because the state's questions clearly focused on the pre-*Miranda* interview, the present situation is distinguishable from the cases the defendant cites in support of his argument that the state's use of the term the "first time" amounts to a *Doyle* violation. See, e.g., *State* v. *Brunetti*, 279 Conn. 39, 45-46, 83, 86, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). In *Brunetti*, the defendant was given *Miranda* warnings during a police interview after becoming upset when he was questioned about reddish brown stains on certain clothing, and he provided a confession after receiving a *Miranda* warning. Id., 46. During the trial, the prosecutor asked: "[O]ther than your lawyer, could you please tell . . . the jury when is the first time that you told someone in authority, like a judge, a prosecutor or a police officer, this story about your sweatpants being dipped in blood?" Id., 83. Our Supreme Court concluded that the *Doyle* violation was harmless. Id., 86; see also *State* v. *Apostle*, 8 Conn. App. 216, 220, 512 A.2d 947 (1986) (defendant gave written statement to police after receiving *Miranda* warnings; during final argument, prosecutor focused on defendant not returning to police to correct his statement), superseded by statute on other grounds as stated in *State* v. *Kulmac*, 230 Conn. 43, 58 n.12, 644 A.2d 887 (1994). We, therefore, conclude that the defendant failed to demonstrate that an alleged constitutional violation existed, and thus his unpreserved *Doyle* claim fails the third prong of *Golding*.

## II

The defendant additionally claims that the state's three questions sought to elicit evidence of the defendant's post-*Miranda* silence and, therefore, amounted to prosecutorial impropriety[5] that violated his due process rights. We disagree.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . We first examine whether prosecutorial impropriety occurred.

. . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process

right to a fair trial. . . . [T]he defendant has the burden to show both that the prosecutor's conduct was improper and that it caused prejudice to his defense. . . .

"In determining whether the defendant was deprived of his due process right to a fair trial, we are guided by the factors enumerated by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). These factors include [1] the extent to which the [impropriety] was invited by defense conduct or argument, [2] the severity of the [impropriety], [3] the frequency of the [impropriety], [4] the centrality of the [impropriety] to the critical issues in the case, [5] the strength of the curative measures adopted, and [6] the strength of the state's case. . . . [A] reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the [impropriety] is viewed in light of the entire trial. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citations omitted; internal quotation marks omitted.) *State* v. *Sinclair*, 332 Conn. 204, 236-37, 210 A.3d 509 (2019).

The defendant argues that the state's three questions—"That's the first time that we're hearing this. Isn't that correct?"; "And this is the first time that we're hearing that information?"; and "[B]etween March 31st of 2014 and your arrest in September in Montville and in November in—in Danielson, you never told anybody about that?"—amounted to prosecutorial impropriety because the state attempted to elicit evidence of the defendant's post-*Miranda* silence.

As we discussed in part I of this opinion, the first two questions did not violate *Doyle* and the defendant does not argue how the questions would otherwise amount to prosecutorial impropriety. Therefore, we address only the defendant's arguments as to the state's question of whether the defendant told anybody about the presence of other hikers in the time period between the pre-*Miranda* interview and the defendant's arrests in September and November, 2014. The defendant argues that this last question was improper because it includes a post-*Miranda* time period of two months between the defendant's September and November arrests.

Even if we assume without deciding that the last question was improper, we determine that it did not deprive the defendant of his due process right to a fair trial.[6] See *State* v. *Baltas*, 311 Conn. 786, 827, 91 A.3d 384 (2014) (reaching second step of prosecutorial impropriety analysis by assuming, arguendo, that prosecutor's remarks were improper); see also *State* v. *Ross*,

151 Conn. App. 687, 699, 95 A.3d 1208, cert. denied, 314 Conn. 926, 101 A.3d 271 (2014).

Under our review of the *Williams* factors, we first note that the claimed impropriety was not invited by the defense. Additionally, we conclude that the factors of severity, frequency, centrality of the claimed impropriety, and strength of the curative measures also weigh in favor of the state. In the present case, the claimed impropriety was not pervasive throughout the trial but was confined to a single question that related to uncharged misconduct, and was not central to a critical issue in the defendant's case or his theory of defense. Defense counsel objected to the question before it was answered, the objection was sustained, and the court had previously instructed the jury regarding sustained objections.[7] Although defense counsel failed to request a specific curative instruction, the court's general instruction directed the jury's approach to sustained objections, curing any impropriety. See *State* v. *A. M.*, 324 Conn. 190, 207, 152 A.3d 49 (2016) ("in nearly all cases where defense counsel fails to object to and request a specific curative instruction in response to a prosecutorial impropriety, especially an impropriety that we do not consider to be particularly egregious, and the court's general jury instruction addresses that impropriety, we have held that the court's general instruction cures the impropriety").

Finally, we consider the sixth factor, namely the strength of the state's case. Because there was no physical evidence and the state's case relied on the victim's testimony, which the defendant, in part, corroborated, we cannot conclude that the state's case was particularly strong. Nevertheless, our Supreme Court has "never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 596, 849 A.2d 626 (2004).

Under the present circumstances, in which the claimed impropriety—one question—was objected to and the objection was sustained before the question was answered, and the court's general instructions were sufficiently curative, we conclude that the defendant was not denied his due process rights and that his prosecutorial impropriety claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The defendant has raised three additional issues on appeal, claiming that (1) the trial court improperly denied his motions for judgments of acquittal because of insufficient evidence of penetration to support the conviction for sexual assault in the first degree or, alternatively, because the conviction was against the weight of the evidence, (2) he was deprived of his due process rights as a result of prosecutorial impropriety because

the state improperly elicited constancy of accusation evidence, which led to an erroneous jury instruction, and the state made comments in rebuttal that misstated evidence, related to the constancy of accusation evidence, and highlighted the defendant's interest in the case, and (3) that the trial court improperly joined his separate cases for trial. We carefully have considered the defendant's claims and conclude that they have no merit.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] The questions that the defendant claims constituted *Doyle* violations occurred during the following exchange:

"[The Prosecutor]: Okay. So only the two of you would know what happened out in—in the woods?

"[The Defendant]: Correct. There was a lot of other people there at the time, too, walking around hiking, too, so—

"[The Prosecutor]: You didn't tell the police that when you talked to them.

"[The Defendant]: They didn't ask.

"[The Prosecutor]: *That's the first time that we're hearing this. Isn't that correct*?

"[The Defendant]: I do believe I—I don't—actually I don't know if I told them at the time or not. The fact is, is when we were walking around, there were other people there. The place was busy. It was in the middle of summer and it was Green Falls.

"[The Prosecutor]: *And this is the first time that we're hearing that information*?

"[The Defendant]: Nobody inquired previous to it.

"[The Prosecutor]: Well, you're in a two-hour interview with police officers and you have time to talk about other things, you talk about your vaporizer, you talk about your brewing at the beginning of the video?

"[The Defendant]: Yes, when inquired.

"[The Prosecutor]: And you never thought to mention to them that there were a bunch of other people around on this hike?

"[The Defendant]: Well, there's people walking. It's a hiking path at Green Falls. There was people camping there. As we were walking, we passed people, we had conversations with people. So, yes, there's other people, but nothing—again, nothing that I thought of, nothing out of the ordinary, nothing more than a hike, a normal hike.

"[The Prosecutor]: So when you're in an interview room with two police officers being accused of touching a child on a hike—

"[The Defendant]: Yeah.

"[The Prosecutor]: —alone, you didn't think it was helpful information that maybe there were other people around?

"[The Defendant]: I had stated that there were other people around in the beginning. I stated that I had asked a bunch of other people if they wanted to go for a hike, too.

"[The Prosecutor]: So they were back at the campsite?

"[The Defendant]: Those people were, yes.

"[The Prosecutor]: Right. So we're talking about when you were on the hike alone with [the victim].

"[The Defendant]: It just didn't cross my mind. There was people. You hike, you see people.

"[The Prosecutor]: Okay. And so you—so you—

"[The Defendant]: And there was nothing spe—yeah, I mean yeah, there was—

"[The Prosecutor]: So you didn't tell the officers about that?

"[The Defendant]: No. No.

"[The Prosecutor]: *And between March 31 of 2014 and your arrest in September in Montville and in November in—in Danielson, you never told anybody about that*?

"[Defense Counsel]: Objection, Your Honor.

"The Court: Send the jury out." (Emphasis added.)

When the jury returned, the court stated: "All right. I think when we broke there was an objection. That objection is sustained."

[5] The defendant raises other instances of prosecutorial impropriety, but as we stated in footnote 2 of this opinion, we conclude that the remainder of the defendant's prosecutorial impropriety claim is without merit. We, therefore, address only the claimed *Doyle* violations that the defendant argues are instances of prosecutorial impropriety.

[6] Our opinion should not be understood to suggest that the prosecutor

committed impropriety at any time during her questioning. In *State* v. *Papantoniou*, 185 Conn. App. 93, 111, 196 A.3d 839, cert. denied, 330 Conn. 948, 196 A.3d 326 (2018), this court explained: "The two steps of [our] analysis are separate and distinct, and we may reject the claim if we conclude that the defendant has failed to establish either prong." (Internal quotation marks omitted.) Accordingly, like in *Papantoniou*, we simply assume, solely for the sake of argument, that the prosecutor's question was improper. See id., 112 n.19.

[7] On the first day of trial, the court gave the jury the following instruction: "If I sustain [an] objection, you will not hear an answer to the question and you should not wonder why the objection was made and you should not speculate as to what an answer might have been." The court also instructed the jury at the close of evidence that "any question or objection by a lawyer is not evidence . . . testimony that has been excluded or stricken is not evidence and must be disregarded . . . ."

————————————————————